UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

                Plaintiff,

                                      Crim. No. 05-387 (RHK)
                                      Civ. No. 11-2949 (RHK)
                                      **MEMORANDUM OPINION**
                                      **AND ORDER**

v.

John Thomas Turpin,

                Defendant.

Clifford Wardlaw, Assistant United States Attorney, Christian S. Wilton, former Assistant United States Attorney, Minneapolis, Minnesota, for Plaintiff.

John Thomas Turpin, Defendant *pro se*, Terre Haute, Indiana.

      This matter is before the Court on Defendant John Thomas Turpin's Motion pursuant to 28 U.S.C. § 2255. For the reasons that follow, the Motion will be denied.

### BACKGROUND

      The factual background in this case is set forth in the Eighth Circuit's opinion affirming Turpin's conviction. Familiarity with that background (and the prior proceedings in this case) is assumed, see United States v. Turpin, 593 F.3d 747 (8th Cir. 2010), and will be repeated here only to the extent necessary to understand this decision.

      Turpin and his brother (Goodwin) were charged in a Second Superseding Indictment with robbing the A&E Produce store in Shevlin, Minnesota, and shooting its owners, as well as several related offenses. Before trial, Turpin notified the Government

and the Court that he intended to press an insanity defense. He also moved for severance, arguing that he wanted to offer exculpatory testimony for his brother, but to do so he would have to waive his Fifth Amendment rights if the two were tried jointly. If his trial were severed, however, he could stand on his Fifth Amendment rights in his own trial but offer exculpatory testimony on Goodwin's behalf in a subsequent trial. The Court denied the severance Motion, noting among other things the preference for co-defendants to be tried together and that Turpin's "mere denial" of his brother's involvement was insufficient to warrant severance.

The case then proceeded to trial before the undersigned and a jury. Turpin waived his Fifth Amendment rights and testified, claiming that Goodwin knew nothing about the robbery. He also testified about purported hallucinations he had been suffering and his lengthy problems with mental illness, and he called a forensic psychologist to testify in support of his insanity defense. Following several days of deliberations, the jury acquitted Goodwin of all charges but convicted Turpin of most of the charges in the Second Superseding Indictment. Given his prior criminal history, the Court later sentenced him to 380 months' imprisonment.

Through counsel, Turpin then appealed, arguing that the Court had erred in denying his severance Motion and in declining to instruct the jury that a verdict of not guilty by reason of insanity would result in his civil commitment, rather than him being released outright. The Eighth Circuit rejected these arguments and affirmed Turpin's conviction. Acting *pro se*, Turpin then filed a petition for a writ of *certiorari*, which was denied by the Supreme Court.

Turpin then filed the instant Motion under 28 U.S.C. § 2255. He argues that his counsel was ineffective in several ways, both at trial and on appeal. The Government has filed a response to the Motion, to which Turpin has replied. The Motion is now ripe for disposition.

## STANDARD OF DECISION

In order to obtain relief under § 2255, a federal prisoner must show that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." A motion under § 2255 "may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Rather, relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

Generally speaking, claims of ineffective assistance of counsel fall within the narrow range of matters that may be raised in a § 2255 proceeding. Such claims are governed by the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant claiming ineffective assistance must show that (1) his attorney's performance was deficient and (2) the deficiency prejudiced his defense. Id. at 689. These are very high hurdles. There is a "strong presumption" in favor of counsel's competence, id., and courts must "not second-guess strategic decisions or exploit the benefits of hindsight," Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir.

1997); accord Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). Similarly, to meet Strickland's prejudice prong, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.[1]

## ANALYSIS

Turpin asserts in his Motion seven ineffective-assistance claims, but none passes muster.

Claim 1: In his first Claim, Turpin asserts that his counsel was ineffective for failing to interview two persons before trial: Steven Hilliard, a Government witness who was at A&P Produce on the day of the robbery, and Barbara Chromy, a counselor who previously provided Turpin mental-health treatment.

The Eighth Circuit has recognized that "failing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective." Kramer v. Kemna, 21 F.3d 305, 309 (8th Cir. 1994). But a finding of ineffectiveness does not flow automatically from such a failure. Id. Rather, the petitioner still must show prejudice from counsel's conduct, that is, he must "make a substantial showing that, but for counsel's failure to interview . . . the witnesses in question, there is a reasonable probability that the result of his trial would have been different." Id.; accord, e.g., United

---

[1] "A defendant is entitled to a hearing on a § 2255 motion 'unless the motion, files, and record conclusively show' that the defendant is not entitled to relief." United States v. Regenos, 405 F.3d 691, 694 (8th Cir. 2005) (citation omitted). For the reasons below, the record conclusively demonstrates that Turpin is not entitled to relief, and hence no hearing is necessary.

- 4 -

States v. Vazquez-Garcia, 211 F. App'x 544, 546 (8th Cir. 2007) (*per curiam*). Turpin cannot do so here.

With regard to Hilliard, Turpin attempts to show prejudice by pointing to the denial of his Motion to sever. He argues that the Court denied the Motion based on Hilliard's expected trial testimony (as proffered by the Government),[2] and had counsel interviewed Hilliard before trial, it would have been apparent the testimony was false and, accordingly, the Court would have granted severance, which Turpin believes would have resulted in his acquittal. (Mot. ¶ 1 at 2 (asserting that had counsel uncovered the alleged falsity in Hilliard's testimony, Turpin "would have been granted severance and . . . would not have had to testify at [his] own trial").) There are at least three problems with this argument.

First, the Eighth Circuit has already determined that this Court properly denied severance. Turpin cannot now relitigate that issue through the back door of ineffective assistance. See, e.g., Bear Stops v. United States, 339 F.3d 777 (8th Cir. 2003) ("It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255."); United States v. Agboola, Crim. No. 01-162, 2006 WL 2521624, at *11 (D. Minn. Aug. 30, 2006) (Tunheim, J.) ("Having challenged this [issue] . . . on appeal and lost, Agboola may not now relitigate the issue under the guise of an ineffective assistance claim."). Second, Turpin wrongly assumes the Court relied upon Hilliard's proposed testimony when

---

[2] According to Turpin, Hilliard's testimony concerned Goodwin's location outside A&E Produce immediately prior to and following the robbery. (Mot. ¶ 1 at 1.)

- 5 -

denying severance. In actuality, the Court simply pointed out that there would be "eyewitness" testimony regarding Goodwin's location during and after the robbery (Doc. No. 177 at 2), which was in fact provided by *different witnesses*, not Hilliard. (See Trial Tr. at 174-78, 277.) Third, the Court would have denied Turpin's severance Motion regardless of Hilliard's proposed testimony (true or not). Turpin sought severance in order to provide exculpatory testimony for Goodwin, but as the Court noted when denying his Motion, the Eighth Circuit has expressed

> serious doubts that a bald assertion by one defendant that he or she will testify as to the innocence of another can be said to be sufficiently exculpatory to mandate severance. The preference for trying [co-defendants] together, particularly where the evidence against them is from the same underlying circumstances, would be too easily avoided if mere claims of innocence of one by another were taken as truly exculpatory, absent allegations of alibi or like defenses that specifically deny or challenge the particular elements of the crime that the government must prove.

(Doc. No. 177 at 3 (quoting United States v. Foote, 920 F.2d 1395, 1400 n.3 (8th Cir. 1991)).) Given the preference for jointly trying co-defendants and the significant amount of evidence against the defendants (despite a jury later finding Goodwin not guilty), the Court would have denied severance even if Turpin's counsel had interviewed Hilliard before trial. Turpin simply cannot show prejudice from this failure.[3]

As for Chromy, Turpin claims she was a "very important" witness regarding his mental-health issues and would have "swayed the jury to return a verdict of not guilty by

---

[3] Indeed, the Court strongly suspects that Turpin would have taken the stand regardless of severance, in order to support his insanity defense. It was largely undisputed at trial that Turpin robbed A&E Produce and shot its owners. (See Trial Tr. at 747-52.) The only real question was whether he was sane at the time.

- 6 -

reason of insanity." (Mot. ¶ 1 at 4.) But as he acknowledges, Chromy's clinical records were referred to throughout the trial (id.), and Turpin offered a forensic psychologist to testify – at length – about his life-long mental problems. Moreover, Turpin took the stand in his own defense and testified about hallucinations and other psychological problems he had been suffering. Testimony from Chromy, therefore, would have been cumulative and highly unlikely to affect the jury's verdict. See, e.g., Winfield v. Roper, 460 F.3d 1026, 1033-34 (8th Cir. 2006) (counsel not ineffective for failing to interview or call witnesses whose testimony would have been cumulative).

Claim 2: In his second Claim, Turpin asserts his counsel was ineffective for failing to make objections when requested by him.[4] In particular, he claims that the testimony of Hilliard and Glen Forehand, a prisoner who testified about jailhouse conversations he had with Goodwin, "was so ridiculous and silly that any half-way intelligent person would know that they were lying." (Mot. ¶ 2 at 5.) As a result, he asserts the Government must have known these individuals would lie on the witness stand and, hence, committed "prosecutorial misconduct" by calling them. And he contends his counsel was ineffective for failing to object to this "misconduct." (Id.)

But Turpin has offered only generalities, without explaining how these witnesses supposedly "lied." See Vazquez-Garcia, 211 F. App'x at 546 (affirming denial of ineffective-assistance claim predicated on defendant's speculation about witness testimony). Moreover, each witness was aggressively cross-examined, and in light of the

---

[4] Turpin also claims that his counsel was ineffective for failing to move to recuse the undersigned as "a racist" (Mot. ¶ 2 at 5), but he provides no further details.

mountain of other evidence against Turpin, the failure to object to the Government calling these witnesses, in the Court's view, had no impact on the jury's verdict. See, e.g., Barnes v. United States, 859 F.2d 607, 608 (8th Cir. 1988) (affirming denial of ineffective-assistance claim; "[e]ven assuming that counsel's performance . . . may have been deficient" by not "thorough[ly] prepar[ing]" the defendant to testify and by failing to take an "incisive approach to cross-examination of prosecution witnesses," it "could not have made any difference" due to the "overwhelming evidence against" him).

Claim 3: In his third Claim, Turpin argues that counsel was ineffective by failing to preserve for appeal (1) the issues raised in Claim 2 above and (2) the issue of "jury misconduct." (Mot. ¶ 3 at 6.) Having determined that the issues in Claim 2 fail both factually and legally, counsel cannot have been ineffective by omitting them from Turpin's appeal. See, e.g., Dodge v. Robinson, 625 F.3d 1014, 1019 (8th Cir. 2010) ("Having found Dodge's double-jeopardy claim to be without merit, we have no difficulty deciding that his counsel's failure to raise the claim . . . could not constitute ineffective assistance."); Thomas v. United States, 951 F.2d 902, 905 (8th Cir. 1991) (*per curiam*) (same).

As for "jury misconduct," Turpin claims that his counsel advised him that "he talked to some of the jury members after the trial" and was informed the jury "agreed [he] was insane at the time of the crime," but "they thought [he] would go free" by returning a verdict of not guilty by reason of insanity and he was "too dangerous" for that to happen, so they "compromised" by convicting him and acquitting Goodwin. (Mot. ¶ 3 at 6.) Such "vague third-party hearsay" will not support an ineffective-assistance claim.

Harnden v. Rowland, 182 F. App'x 729, 730 (9th Cir. 2006); accord, e.g., Maxwell v. Quarterman, Civ. No. SA-06-CA-884-OG, 2008 WL 3200672, at *18 (W.D. Tex. July 30, 2008). More importantly, the Federal Rules of Evidence prohibit a court from considering, in connection with an attack on a jury verdict, "any statement made or incident that occurred during the jury's deliberations" or "any juror's mental processes concerning the verdict or indictment," unless it concerns "extraneous prejudicial information" that was "improperly brought to the jury's attention." Fed. R. Evid. 606(b)(1)-(2). In other words, a jury verdict simply cannot be attacked in the manner Turpin argues here, namely, through "evidence of the thought processes . . . of individual jurors." United States v. Krall, 835 F.2d 711, 716 (8th Cir. 1987). Hence, Turpin's counsel cannot have been ineffective by failing to preserve this issue for appeal.

Claims 4 and 5: In his fourth and fifth Claims, Turpin argues that his counsel was ineffective by failing to move for rehearing *en banc* after the Eighth Circuit affirmed his conviction (Claim 4) and by failing to petition the Supreme Court for a writ of *certiorari* (Claim 5). These Claims are easily dispatched. "The right to counsel at trial is guaranteed by the Sixth Amendment, but the Fifth Amendment due process clause governs the right to counsel for appellate proceedings." Steele v. United States, 518 F.3d 986, 988 (8th Cir. 2008). Due process "guarantees a criminal defendant a constitutional right to counsel for [his] first appeal," but it "does *not* . . . guarantee a constitutional right to counsel for" discretionary appellate review, id. (emphasis in original), such as a petition for rehearing *en banc*, see, e.g., Washpun v. United States, 109 F. App'x 733, 735 (6th Cir. 2004), or a petition for a writ of *certiorari*, Steele, 518 F.3d at 988. Since

Turpin "had no constitutional right to counsel" in connection with rehearing *en banc* or *certiorari*, "he could not be deprived of the effective assistance of counsel." Wainwright v. Torna, 455 U.S. 586, 587-88 (1982); accord, e.g., Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("[W]here there is no constitutional right to counsel there can be no deprivation of effective assistance.").

Claim 7:[5] In his seventh Claim, Turpin asserts that his counsel "waived [his] right to be present during the discussions of [] jury questions, without [his] knowledge and permission." (Mot. ¶ 7.) This Claim also fails.

A criminal defendant generally has a right to be present "at every trial stage," Fed. R. Crim. P. 43(a)(2), but this right is a qualified one – it does not extend to proceedings involving "only . . . a question of law." Fed. R. Crim. P. 43(b)(3). The Eighth Circuit has recognized that conferences regarding jury questions are legal matters at which a defendant need not be present. See, e.g., United States v. Clark, 409 F.3d 1039, 1043-44 (8th Cir. 2005) ("Rule 43(b)(3) does not require the defendant's presence at a chambers conference held to determine a jury's request for more instructions."). Accordingly, Turpin's absence was not improper and cannot support an ineffective-assistance claim.[6]

---

[5] The Court has omitted discussion of Turpin's sixth Claim, which asserts he is entitled to relief due to the "cumulative" effect of his counsel's errors. (Mot. ¶ 6 at 10.) As the Court finds no errors, this claim need not be addressed.

[6] Furthermore, Turpin cannot show prejudice from his absence. He claims that had he been present, he "would have insisted" the Court provide a different response to the jury. (Mot. ¶ 7 at 12.) But he has nowhere argued, or even suggested, that the Court's response was inaccurate or misstated the law. And he simply speculates as to how the jury might have reacted to a different response.

For all of these reasons, each of Turpin's Claims fails. The Court anticipates, however, that he will seek appellate review of this Order. To appeal a final order in a proceeding under § 2255, the defendant must obtain a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(B). A district court cannot grant a Certificate of Appealability unless the defendant "has made a *substantial showing* of the denial of a constitutional right." Id. § 2253(c)(2) (emphasis added); accord, e.g., Williams v. United States, 452 F.3d 1009, 1014 (8th Cir. 2006). A Certificate of Appealability will not issue simply because an appeal might be pursued in good faith, raising non-frivolous issues. See Kramer, 21 F.3d at 307 ("Good faith and lack of frivolousness, without more, do not serve as a sufficient bases for issuance of a certificate under 28 U.S.C. § 2253."). Rather, the defendant must show that the issues are "debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise "deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

The Court concludes that Turpin does not meet this exacting standard here. His claims have been fully addressed and lack merit; the Court does not believe they are "debatable among reasonable jurists." Cox, 133 F.3d at 568. Turpin has not shown sufficient reason to believe that any other court – including the Eighth Circuit – would decide this case any differently than it was decided here. And, he has not identified, and the Court cannot independently discern, anything novel, noteworthy or worrisome about his case warranting appellate review.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Turpin's Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 235) is **DENIED**, and Turpin is not entitled to a Certificate of Appealability.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Date: March 18, 2013                             s/Richard H. Kyle
                                                 RICHARD H. KYLE
                                                 United States District Judge